TODD KIM
Assistant Attorney General
BRANDON N. ADKINS
Senior Trial Counsel
RACHEL D. MARTINEZ
Trial Attorney
Environment & Natural Resources Division
P.O. Box 7611
Washington, DC 20044
Phone: (202) 616-9174 (Adkins)
Phone: (202) 616-5589 (Martinez)

JASON M. FRIERSON
United States Attorney
District of Nevada
Nevada Bar No. 7709
LINDSAY AGER
Assistant United States Attorney
Nevada Bar No. 11985
501 Las Vegas Blvd. So., Suite 1100
Las Vegas, Nevada 89101
Phone: (702) 388-6336
Lindsay.Ager@usdoj.gov

*Attorneys for the United States*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| SUNSET COMMERCIAL LLC, | Case No. 2:23-cv-02081-GMN-BNW |
| Plaintiff, | **United States' Motion to Dismiss** |
| v. | |
| BAYER CROPSCIENCE, INC., et al., | |
| Defendants. | |

Defendant United States moves to dismiss the first and second claims for relief in the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). Accepting the allegations in the complaint as true, the claims are time-barred. This motion is supported by the accompanying points and authorities.

## I. Introduction

Plaintiff Sunset Commercial LLC ("Sunset") brings this action to recover costs it allegedly incurred to clean up asbestos-contaminated soils on a 30-acre parcel of desert in

Henderson, Nevada. Sunset acquired the parcel in 2013 and refers to it as the "Sunset Site." Sunset attempts to satisfy its pleading obligation by alleging that the Sunset Site is the same "facility"—a term of art under the relevant environmental statute—as a larger industrial complex from which the asbestos contamination allegedly originated. Sunset also alleges that its cleanup efforts are the same response action as at that larger industrial complex. In other words, Sunset relies on the prior response action to plead certain statutory elements of its federal environmental claims.

But Sunset's pleading strategy has a critical consequence. As pled, Sunset's federal environmental claims are time-barred. A six-year statute of limitations applies and started no later than January 15, 2009, when physical on-site construction of the approved remedy began. The limitations period ended on the same date six years later. On the face of the pleadings, therefore, Sunset's claim is barred and must be dismissed.

## II.  Statutory Background

Congress enacted the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") in 1980 in response to the serious environmental and health dangers posed by property contaminated by hazardous substances. *See United States v. Bestfoods*, 524 U.S. 51, 55 (1998). CERCLA, as amended, "both provides a mechanism for cleaning up hazardous-waste sites and imposes the costs of the cleanup on those responsible for the contamination." *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 7 (1989), *overruled on other grounds*, *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 66 (1996).

Two CERCLA provisions allow private parties to recover costs associated with cleaning up contaminated sites—sections 107(a) (cost-recovery actions) and 113(f) (contribution actions). 42 U.S.C. § 9607(a), § 9313(f). Sunset asserts CERCLA cost-recovery claims under section 107(a).

Under section 107(a), a private party that voluntarily cleans up a contaminated site may sue to recover certain costs associated with the cleanup. *See United States v. Atl. Rsch. Corp.*, 551 U.S. 128, 131 (2007). To establish a prima facie claim under section 107(a), the private party must demonstrate: (1) the contaminated site is a "facility," 42 U.S.C.

§ 9601(9); (2) a "release" or "threatened release" of any "hazardous substance" from the facility occurred, *id.* § 9607(a)(4); (3) the "release" or "threatened release" caused the private party to incur response costs that are "necessary" and "consistent with the national contingency plan," *id.* § 9607(a)(4)(B); and (4) the defendant is one of four classes of potentially responsible parties (or PRPs) subject to liability. *See City of Colton v. Am. Promotional Events, Inc.-West*, 614 F.3d 998, 1002–03 (9th Cir. 2010).

The four classes of potentially responsible parties include: (1) the owner and operator of the facility; (2) former owners and operators of the facility at the time of disposal; (3) arrangers; and (4) transporters. 42 U.S.C. § 9607(a)(1)–(4).

CERCLA generally defines a "response" to include a "remedial action." *Id.* § 9601(25). And CERCLA defines "remedial" actions as those "consistent with permanent remedy taken . . . to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger." *Id.* § 9601(24).

For a remedial action, a party seeking to recover costs under section 107(a) must sue within six years "after initiation of physical on-site construction of the remedial action." *Id.* § 9613(g)(2)(B).

### III.  Factual Background

For purposes of this motion, the United States accepts as true the facts alleged in the operative complaint. The United States reserves its right to contest those facts, if necessary, later in the case.

In 1941, the United States acquired about 5,000 acres of desert in Clark County, Nevada, and contracted with Basic Magnesium, Inc. to oversee the construction and operation of a magnesium-production plant in support of anticipated World War II military demands. Am. Compl. ¶¶ 45–48, ECF No. 35. The plant was located within a larger industrial area that became known as the Black Mountain Industrial Complex ("BMI Complex"). *Id.* ¶¶ 6, 49. The plant produced magnesium from about 1942 to 1944. *Id.* ¶¶ 50–53. An associated chlorine and caustic soda plant remained in operation after

magnesium production ceased. *Id.* ¶¶ 53, 57. The United States owned the plant until 1949, when it transferred the BMI Complex to the State of Nevada. *Id.* ¶¶ 59–64.

In 1952, Nevada sold parts of the BMI Complex to five companies that had been leasing the purchased property. *Id.* ¶ 69. Nevada sold the rest of the BMI Complex to Basic Management, Inc., a company those five principal operating companies formed to acquire and manage certain common assets at the BMI Complex. *Id.* ¶¶ 70–71.

The United States subsequently purchased and operated an ammonium perchlorate plant at a portion of the BMI Complex from about 1953 to 1962. *Id.* ¶¶ 72–76.

When the magnesium plant was being constructed, the United States also built an open-air ditch system to carry industrial effluent and storm runoff from the plant to retention ponds. *Id.* ¶¶ 89–90. Industrial actors at the BMI Complex used the ditch system to discharge waste from the magnesium plant and other areas of the BMI Complex until about 1976. *Id.* ¶¶ 91–92.

Two such ditches—the Western Ditch and Northwest Ditch—traversed and conveyed industrial waste across an approximately 30-acre parcel that Sunset acquired in 2013 and refers to as the "Sunset Site." *Id.* ¶¶ 5, 93–98, 144, 147. Sunset identified asbestos-contaminated soils near the Western Ditch at the Sunset Site and, in this action, seeks to recover about $6 million it allegedly incurred to clean up that contamination. *Id.* ¶¶ 148–152.

The Nevada Division of Environmental Protection has been addressing the effects of historic disposals of hazardous wastes at the BMI Complex. *Id.* ¶ 11. Some companies that operated at the BMI Complex (or their successors) have agreed to investigate and perform cleanup work at the BMI Complex. *See id.* ¶¶ 109–11, 117–19, 123–26, 129–30, 136–39. In November 2001, following input from the surrounding community, the Nevada Division of Environmental Protection selected a permanent remedy for the contamination of soils at the BMI Complex that primarily involves excavating and disposing the contaminated soils. *Id.* ¶¶ 141–43. The decision is reflected in a document called a "Record of Decision," which is Exhibit A to this motion. *Id.* ¶ 141. On-site construction of the

permanent remedy began at least as early as January 15, 2009. Quarterly Progress Report 2 (Jan. 15, 2009) (describing progress of construction of permanent remedy), Exhibit B.

Basic Management, Inc. and affiliated companies sued to recover costs incurred with the BMI Complex soils remediation and for declaratory relief for future remediation costs. *Basic Mgmt. Inc. v. United States*, 569 F. Supp. 2d 1106, 1112 (D. Nev. 2008). On summary judgment, the Court determined that the United States is a liable party for hazardous wastes disposed of at the BMI Complex and that certain response costs may be recoverable. *Id.* at 1118–21. The parties later reached a settlement and stipulated to dismissal with prejudice, which the Court signed and entered in October 2010. Settlement Report & Stipulation for Dismissal with Prejudice, *Basic Mgmt. Inc. v. United States* (D. Nev. Case No. 02-CV-884), ECF No. 526.

Sunset alleges the BMI Complex and Sunset Site are a "single 'facility'" as that term is defined by CERCLA. Am. Compl. ¶ 167. Sunset further alleges that the cleanup measures it performed at the Sunset Site "are all part of the same response action" as the BMI Complex remediation. *Id.* ¶ 143. And Sunset alleges that the public input obtained before selection of the permanent remedy in November 2001 (a requirement under CERCLA, as explained below) is "equally applicable" to the cleanup work Sunset performed at the Sunset Site. *Id.* ¶ 143; *see also id.* ¶¶ 141–42.

On December 14, 2023, Sunset commenced this civil action and asserts two CERCLA cost-recovery claims against the United States. The United States now moves to dismiss those claims as time-barred.

## IV.  Points and Authorities

### A.    Legal Standard

The Court must dismiss under Rule 12(b)(6) when the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). Mere "labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Although review at this stage is generally limited to the pleadings, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Weingartner v. Chase Home Fin., LLC*, 702 F. Supp. 2d 1276, 1284 (D. Nev. 2010). The Court may also take judicial notice of matters of public record. *Id.*

A statute-of-limitations defense may be raised in a motion to dismiss if the basis for the defense is "apparent from the face of the complaint." *Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (cleaned up). The Court may grant a motion to dismiss based on the running of a statute of limitations where the allegations in the complaint foreclose the plaintiff from proving the statute has not run. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). If the complaint is filed after the limitations period expired, the action is untimely, and the Court must dismiss. *See Seven Arts*, 733 F.3d at 1254.

**B.    Request to Take Judicial Notice**

The United States requests that the Court take judicial notice of the November 2001 Record of Decision and the Quarterly Progress Report dated January 15, 2009, which was submitted to the Nevada Division of Environmental Protection. The documents are Exhibits A and B to this motion. They are publicly available in an online data repository for BMI Complex remediation activities.[1] And their authenticity cannot reasonably be questioned. *See* Fed. R. Evid. 201(b); *Weingartner*, 702 F. Supp. 2d at 1284; *see, e.g.*, *United States v. Boeing Co.*, 670 F. Supp. 3d 1185, 1189 n.4 (W.D. Wash. 2023) (taking judicial notice of record of decision).

---

[1]    https://brcrestorationproject.com/index.php/data-repository?view=single&layout=table&id=2&show_title=0&show_description=0 (within the "Major Documents" and "2009 Documents" subfolders)

In this instance, it would be appropriate for the Court to consider the Record of Decision for the additional reason that it is cited in the Amended Complaint and forms a basis of Sunset's claims. Am. Compl. ¶ 141–42; *see United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.").

**C.   Sunset's CERCLA Claims are Time-Barred.**

A "limitations period commences when the plaintiff has a complete and present cause of action." *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of California*, 522 U.S. 192, 201, (1997) (cleaned up). As demonstrated below, Sunset alleges the Sunset Site is the same "facility" as the BMI Complex and that cleanup of the Sunset Site is part of the same response action. The BMI Complex response is a remedial action. For a remedial action, a party must sue within six years "after initiation of physical on-site construction of the remedial action." 42 U.S.C. § 9613(g)(2)(B). Construction of the remedial action began no later than January 15, 2009, so the limitations period expired on January 15, 2015. Sunset commenced this action in December 2023. Sunset's CERCLA claims, therefore, are time-barred and must be dismissed. *See Seven Arts*, 733 F.3d at 1254.

*1.      The Sunset Site and BMI Complex are a single facility and response action.*

Sunset alleges that the Sunset Site and the BMI Complex are "a single 'facility' as defined in CERCLA Section 101(9)." Am. Compl. ¶ 167. CERCLA broadly defines "facility" to include "any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located." 42 U.S.C. § 9601(9).

Sunset further alleges that the work it performed at the Sunset Site and the BMI Complex remediation "are all part of the same response action for purposes of National Contingency Plan" compliance. Am. Compl. ¶ 143. To state a claim, Sunset must allege that its cleanup costs are necessary and consistent with the National Contingency Plan. 42 U.S.C. § 9607(a)(4)(B). Response costs are necessary when "an actual and real threat to human health or the environment exist[s]." *Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270

F.3d 863, 870–71 (9th Cir. 2001) (en banc). The National Contingency Plan "specifies procedures for preparing and responding to contaminations and was promulgated by the Environmental Protection Agency (EPA)." *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 161 n.2 (2004). The National Contingency Plan is "designed to make the party seeking response costs choose a cost-effective course of action to protect public health and the environment." *Carson Harbor Vill. Ltd. v. Cnty. of Los Angeles*, 433 F.3d 1260, 1265 (9th Cir. 2006) (cleaned up). Response costs are consistent with the National Contingency Plan "if the action, when evaluated as a whole, is in substantial compliance" with it and "results in a CERCLA-quality cleanup." 40 C.F.R. § 300.700(c)(3)(i). This includes some opportunity for public participation in the selection of the response action. *Id.* § 300.700(c)(6).

Sunset alleges the Sunset Site cleanup is based on the investigation and selection of a permanent remedy at the BMI Complex, Am. Compl. ¶¶ 140–42, and that the public input obtained before the selection of a permanent remedy in November 2001 is "equally applicable" to the cleanup at the Sunset Site, *id.* ¶ 143. Sunset otherwise fails to allege any facts that would satisfy the public participation element of National Contingency Plan consistency.[2]

2.    *The BMI Complex response is a remedial action.*

The November 2001 Record of Decision for the BMI Complex that Sunset refers to in its pleadings characterizes the BMI Complex response as remedial. *See* Am. Compl. ¶ 141–42; *Long Beach Unified Sch. Dist. v. Santa Catalina Island Co.*, No. 19-1139, 2021 WL 4706552, at *9 (C.D. Cal. Aug. 17, 2021) (holding that parties' characterization of cleanup effort supported that effort being "remedial action"). The Record of Decision documents the Nevada Division of Environmental Protection's selection of a remedy for contaminated

---

[2]    Rather, Sunset summarily asserts—without more—that its cleanup costs are consistent with the National Contingency Plan. Am. Compl. ¶ 152. This threadbare pleading is insufficient and provides an additional and independent reason why the CERCLA claims should be dismissed. *See City of Spokane v. Monsanto Co.*, 237 F. Supp. 3d 1086, 1095 (E.D. Wash. 2017) (dismissing claim where no alleged facts could support extensive requirements governing hazardous substance response in National Contingency Plan).

soils within parts of the BMI Complex. Record of Decision 1 (Nov. 2, 2001), Exhibit A. The Nevada Division of Environmental Protection selected the alternative to excavate contaminated soils and encapsulate them in a dedicated landfill (termed a Corrective Action Management Unit or CAMU) within the BMI Complex and thereby minimize transportation risks to the community (rather than transporting them to an offsite landfill). *Id.* at 8.

The Record of Decision's subtitle lends additional support that the response is remedial: "*Remediation* of Soils and Sediments in the Upper and Lower Ponds at the BMI Complex." Exhibit A. But even if the subtitle did not describe it as such, the document also teems with descriptions of the "remedial action" to be undertaken at the BMI Complex. For example, in summarizing the selection of alternative remedies, the Record of Decision states, "[Nevada Division of Environmental Protection's] *remedial action* goal for the Site is to achieve a cleanup level protective of human health and the environment." Record of Decision, Executive Summary (Nov. 2, 2001) (emphasis added); *see also id.* at 4 ("Accordingly, *remedial action* goals which are protective of human health and the environment and allow future residential land use are being established for the Site." (emphasis added)).

Further, and consistent with the Record of Decision, Basic Management, Inc. and its affiliates sued to recover response costs in connection with the BMI Complex soils remediation. *Basic Mgmt. Inc.*, 569 F. Supp. 2d at 1112. The costs that Basic Management, Inc. sought to recover in that case were described as remedial. *E.g.*, *id.* at 1120 ("Plaintiffs have submitted ample evidence that these costs at the BMI Complex for investigating, characterizing, and *remediating* the contamination are costs of response." (emphasis added)); *see also* 2d Am. Compl. ¶ 5, *Basic Mgmt. Inc. v. United States* (D. Nev. Case No. 02-CV-884), ECF No. 179 ("Plaintiffs bring this civil action . . . to recover response costs incurred by them in connection with remediation of property . . . ."). There can be no question that the BMI Complex response—which Sunset alleges is "part of the same response action" here—was remedial. Am. Compl ¶ 143.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

       3.       *CERCLA's six-year limitations period applies.*

       CERCLA's six-year limitations period for a remedial action applies to Sunset's CERCLA claims. Sunset alleges its voluntary cleanup is the same facility and response as the BMI Complex, which is remedial, as demonstrated above. Therefore, the six-year limitations period for remedial action applies to Sunset's cost-recovery claims. *See* 42 U.S.C. § 9613(g)(2)(B).

       4.       *The limitations period ran on Sunset's CERCLA claims.*

       The statute of limitations ran on Sunset's CERCLA claims. To recover costs for a remedial action, the party must sue within six years "after initiation of physical on-site construction of the remedial action." *Id.* § 9613(g)(2)(B). Under CERCLA's statutory definition, a remedial action must be "consistent with permanent remedy." 42 U.S.C. § 9601(24). To be so consistent, "a permanent remedy must already have been adopted." *California ex rel. Cal. Dep't of Toxic Substances Control v. Neville Chem. Co.*, 358 F.3d 661, 667 (9th Cir. 2004). Thus, in the Ninth Circuit, the adoption of a final remedial action plan is a necessary condition for the six-year limitations period to commence. *Id.* at 667–68; *City of Moses Lake v. United States*, 458 F. Supp. 2d 1198, 1215 (E.D. Wash. 2006) (holding that limitations period started after adoption of final remedial action plan). Here, the permanent remedy was adopted in November 2001, when the Nevada Division of Environmental Protection issued the Record of Decision selecting the permanent remedy. *See* Am. Compl. ¶¶ 141–42; *Neville*, 358 F.3d at 667 & n.7.

       The Court must next determine when physical on-site construction of the permanent remedy started. Here, physical on-site construction started no later than January 15, 2009. A quarterly progress report of that date states that "[r]emediation activities continued" in the last quarter and enumerated a number of those activities, including the construction of part of the Corrective Action Management Unit and a "haul road" to transport waste. Quarterly Progress Report 2 (Jan. 15, 2009), Exhibit B.[3]

---

[3]     January 15, 2009, is a conservative starting date (that is, favorable to Sunset). After all, in February 2008—nearly a year earlier—the Court issued a summary judgment

The limitations period began at least as early as January 15, 2009, and expired six years later, January 15, 2015. Sunset commenced this action on December 14, 2023. Compl. 1, ECF No. 1. Therefore, Sunset's CERCLA claims are time-barred and must be dismissed. *See* 42 U.S.C. § 9613(g)(2)(B).

### V.  Conclusion

Based on the above, this Court should dismiss Sunset's CERCLA claims (claims one and two).

Respectfully submitted this 13th day of May 2024.

TODD KIM
Assistant Attorney General

*/s/ Brandon N. Adkins*
BRANDON N. ADKINS
Senior Trial Counsel
RACHEL D. MARTINEZ
Trial Attorney

JASON M. FRIERSON
United States Attorney

LINDSAY AGER
Assistant United States Attorney

*Attorneys for the United States*

---

decision in Basic Management Inc.'s suit to recover remediation costs it had already incurred for the same response action. *See Basic Mgmt., Inc.*, 569 F. Supp. 2d at 1112.