# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| SUNSET COMMERICAL LLC,<br><br>                Plaintiff,<br>vs.<br><br>MONTROSE CHEMICAL CORPORATION OF CALIFORNIA, *et al.*,<br><br>                Defendants. | Case No.: 2:23-cv-02081-GMN-BNW<br><br>**ORDER DENYING<br>MOTIONS TO DISMISS** |

Pending before the Court is a Motion to Dismiss, (ECF No. 64), filed by Defendant United States of America, and a Motion to Dismiss, (ECF No. 65), filed by Defendant Atlantic Richfield Company. Defendants Bayer Cropscience, Inc., Titanium Metals Corporation, LE Petomane XXVII, Inc., Olin Corporation, and Montrose Chemical Corporation of California, filed Joinders to the two Motions to Dismiss. (ECF Nos. 74, 79, 80, 83, 84). Plaintiff Sunset Commercial LLC filed a Response, (ECF No. 93), to which Defendants filed Replies and Joinders, (ECF Nos. 96–102).

Because Defendant United States does not meet its burden of demonstrating that Sunset's CERCLA claims are time barred, the Court **DENIES** the Motions to Dismiss.

**I.**        <u>**BACKGROUND**</u>

Plaintiff Sunset brings this case to recover the costs it expended to clean hazardous substances from land it purchased near Henderson, Nevada. (*See generally* Am. Compl., ECF No. 35). In 2013, Sunset acquired a 32.63-acre parcel of land, which it refers to as the "Sunset Site," adjacent to the Black Mountain Industrial Complex ("BMI Complex"). (*Id.* ¶¶ 5–6, 147). Since WWII, the BMI Complex has contained various industrial operations. In 1941, the United States acquired property within the larger BMI Complex to produce magnesium,

chlorine, and caustic soda. (*Id.* ¶¶ 45–57).  It also built a ditch system to carry waste runoff from the plant into retention ponds. (*Id.* ¶¶ 89–90).  The United States owned the plant for eight years until it transferred the land to the State of Nevada. (*Id.* ¶¶ 59–64).  Nevada sold the property to multiple companies, and the United States subsequently operated an ammonium plant on the BMI Complex in the 1950s. (*Id.* ¶¶ 69–76).  The various industrial projects used the ditch system to discharge waste until about 1975. (*Id.* ¶¶ 91–92).

In 2001, the Nevada Department of Environmental Protection ("NDEP") issued a Record of Decision describing the process for selecting the cleanup work in certain areas of the BMI Complex. (*Id.* ¶¶ 141–42).  Each of the Defendants have been held liable for costs associated with cleanup at the BMI Complex for areas surrounding the Sunset Site, but not for contamination of the Sunset Site itself. (*Id.* ¶¶ 14–15, 139).  While many impacts of the hazardous waste disposal in the BMI Complex were remedied under the oversight of the NDEP in the 1990s and early 2000s, the hazardous waste in the Sunset Site had not yet been addressed. (*Id.* ¶¶ 11–12).

Two ditches carried hazardous substances across the Sunset Site on the way to the evaporation ponds. (*Id.* ¶ 9).  When Sunset acquired the Sunset Site, it identified that the soil was contaminated with asbestos. (*Id.* ¶¶ 148–152).  Sunset cleaned the Sunset Site utilizing the same standards and requirements imposed for cleanup response actions in other areas of the BMI Complex. (*Id.*).  Sunset alleges that the public input collected for the purpose of addressing the other areas of the BMI Complex "is equally applicable for excavation of soil from the Sunset Site" because the soil has been impacted by the same substances from the same sources, and the "cleanup measures are all part of the same response action for purposes of National Contingency Plan ("NCP") compliance." (*Id.* ¶ 143).  Sunset conducted the cleanup under NDEP oversight per a Corrective Action Plan dated November 30, 2018. (*Id.* ¶ 151).

Sunset alleges that the cleanup was consistent with the NCP and cost over $6 million. (*Id.* ¶ 152).

Sunset brings this action for response cost recovery and declaratory judgment under the federal Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), as well as state law claims for the creation of an unlawful nuisance, trespass, strict liability, and negligence. (*Id.* ¶¶ 155–206). Defendants now move to dismiss Plaintiff's claims.

## II.     LEGAL STANDARD

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## III.     DISCUSSION

The first Motion to Dismiss, filed by the United States and joined by the remaining Defendants, argues that the Court should dismiss Plaintiff's CERCLA claims as time barred. (*See generally* USA Mot. Dismiss, ECF No. 64). Defendant Atlantic joins the United States' motion and further asserts that after dismissing the CERCLA claims, the Court should decline

to exercise supplemental jurisdiction over Sunset's state-law claims and dismiss the Amended Complaint in its entirety. (Atlantic Mot. Dismiss 2:5–15, ECF No. 65).

CERCLA "authorizes private parties to institute civil actions to recover the costs involved in the cleanup of hazardous wastes from those responsible for their creation." *3550 Stevens Creek Assocs. v. Barclays Bank*, 915 F.2d 1355, 1357 (9th Cir. 1990). "CERCLA § 107 governs cost recovery actions, defines four categories of potentially responsible parties ("PRPs"), and makes them liable for, among other things, 'any other necessary costs of response incurred by any other person consistent with the national contingency plan.'" *Basic Mgmt. Inc. v. United States*, 569 F. Supp. 2d 1106, 1113–14 (D. Nev. 2008) (quoting 42 U.S.C. § 9607(a)(4)(A)–(B)). To establish a prima facie case for cost recovery, a plaintiff must allege that: (1) the site is a "facility," (2) a "release" or "threatened release" of a hazardous substance occurred, (3) costs were incurred in responding to the release or threatened release, and (4) the defendant is within a class of persons liable under CERCLA. *U.S. v. Chapman*, 146 F.3d 1166, 1169 (9th Cir. 1998). A cost recovery action must be commenced within six years after initiation of physical on-site construction of a remedial action. 42 U.S.C. § 9613(g)(2)(B). And the initiation of physical on-site construction "can only occur after the final remedial action plan is adopted." *California v. Neville Chemical Co.*, 358 F.3d 661, 667 (9th Cir. 2004).

The United States, joined by other Defendants, moves to dismiss the CERCLA claims as time barred, but does not otherwise argue that Plaintiff has not pled the elements of their cost recovery action. It argues that on-site construction of the approved permanent remedy for other areas of the BMI Complex began on January 15, 2009, and that this construction started the clock on the six-year statute of limitations. (USA Mot. Dismiss 4:24–5:2). The remedial action plan for these areas was adopted in 2001 when the Nevada Division of Environmental Protection issued a Record of Decision. (*Id.* 10:14–21); (Am. Compl. ¶ 141). The United States argues that the earlier 2009 construction date applies here because Sunset alleges that the

Sunset Site is part of the same "facility" as the BMI Complex, and that the cleanup of the Sunset Site is part of the same response action for purposes of NCP compliance. (USA Mot. Dismiss 7:10–8:16) (citing Am. Compl. ¶¶ 143, 167). The United States fails to meet their burden on dismissal for multiple reasons.

First, even though the United States repeats Sunset's allegation that the Sunset Site is part of the same "facility" as the BMI Complex, and Sunset must allege that the Sunset Site is a "facility" as part of its prima facie case for cost recovery, the United States does not provide case law or an explanation as to why this allegation leads to the conclusion that the statute of limitations on Sunset's claim began running when construction started on the previous BMI Complex cleanup that did not include the Sunset Site. Similarly, Sunset alleges that its cleanup efforts on the Sunset Site were "part of the same response action" as the BMI Complex cleanup for purposes of NCP compliance, but Defendant fails to connect the dots as to why that means Sunset's claim is time barred. It's true that Sunset must allege that its cleanup costs are consistent with the NCP, and it did. (*See* Am. Compl. ¶ 143). The cleanup, "when evaluated as a whole," must be in "substantial compliance" with the NCP and allow for public participation in the selection of the response action. 40 C.F.R. § 300.700(c)(3), (6). "Only costs incurred in accordance with the NCP may be recovered under CERCLA." *Fireman's Fund Ins. Co. v. City of Lodi, California*, 302 F.3d 928, 949 (9th Cir. 2002). Sunset relies on the public input obtained for the 2001 Record of Decision, which the United States argues it cannot rely on without time-barring its claim, but whether Sunset is in "substantial compliance" with the NCP is a mixed question of law of fact better brought by Defendants at the Motion for Summary Judgment stage of proceedings. *See Louisiana-Pac. Corp. v. ASARCO Inc.*, 24 F.3d 1565, 1576 (9th Cir. 1994).

Second, Plaintiff alleges that the BMI Complex cleanup plan did not address the pollution on the Sunset Site. (Am. Compl. ¶ 12). Sunset compares the Record of Decision map

to the Sunset Site map to demonstrate that the Sunset Site was not included in the scope of the 2001 Record of Decision and the subsequent cleanup. (Resp. 7:19–8:4, ECF No. 93). Preventing Sunset from recovering the costs it has expended to clean the Sunset Site would go against the two primary goals of CERCLA.  "Our court construes CERCLA liberally to effectuate the statute's two primary goals: (1) to ensure the prompt and effective cleanup of waste disposal sites, and (2) to assure that parties responsible for hazardous substances [bear] the cost of remedying the conditions they created." *City of Los Angeles v. San Pedro Boat Works*, 635 F.3d 440, 447 (9th Cir. 2011) (citation and quotes omitted).

In its Response brief, Plaintiff argues that the statute of limitations did not begin to run until after the date of its 2018 Corrective Action Plan for the Sunsite Site. (Resp. 9:10–17). The Corrective Action Plan, dated November 30, 2018, was sent to the NDEP for approval, and Sunset alleges that it "conducted the cleanup under NDEP oversight" in accordance with that Plan. (*Id.*); (Am. Compl. ¶ 151).  The November 2018 date predates the start of onsite construction, and thus its action filed on December 14, 2023, was timely. (Resp. 9:10–17).  In Reply, the United States argues that even if NDEP approved the Corrective Action Plan, the limitations period ran from the initial remedy at the BMI Complex because Sunset alleged it was the same response action "for purposes of National Contingency Plan" compliance. (USA Reply 2:20–3:5, ECF No. 96).  But as the Court has described above, Defendant doesn't explain why being part of the same action for purposes of NCP compliance would be an automatic time bar, nor does it argue that Sunset's Corrective Action Plan is not a final remedial action plan as required by the Ninth Circuit.

Third, and relatedly, the argument that the event commencing the limitations period began four years before Sunset purchased the Sunset Site is incongruous to general rules around the statutes of limitation.  "The standard rule [is] that the limitations period commences when the plaintiff has a complete and present cause of action." *Bay Area Laundry & Dry*

*Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., Inc.*, 522 U.S. 192, 201 (1997) (quoting *Rawlings v. Ray*, 312 U.S. 96, 98 (1941)) (internal quotation marks omitted).  A limitations period typically does not commence "[U]ntil the plaintiff can file suit and obtain relief." *Bay Area Laundry*, 522 U.S. at 201.  Plaintiff could not file suit and obtain relief until it incurred cleanup costs for the Sunset Site.  Therefore, the Court DENIES the United States' Motion to Dismiss.  And because Defendant Atlantic's Motion to Dismiss is based on the argument that after dismissing the CERCLA claims, the Court should decline to exercise supplemental jurisdiction over Sunset's state-law claims, the Court also DENIES Atlantic's Motion to Dismiss.

## V.  CONCLUSION

**IT IS HEREBY ORDERED** that the Defendants' Motions to Dismiss, (ECF Nos. 64, 65), are **DENIED.**

**DATED** this   24   day of October, 2024.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT